UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| REJEANA N. STALLINGS,<br><br>        Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE, Commissioner of the Social Security Administration,<br><br>        Defendant. | CASE NO. 11-cv-5315-BHS-JRC<br><br>REPORT AND RECOMMENDATION ON PLAINTIFF'S COMPLAINT<br><br>NOTING DATE: May 18, 2012 |

This matter has been referred to United States Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Judge Rule MJR 4(a)(4), and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261, 271-72 (1976). This matter has been fully briefed (see ECF Nos. 14, 15, 16).

The ALJ in this matter relied on some of the opinions from plaintiff's examining doctor in order to find that plaintiff did not suffer from a severe medically determinable impairment of Attention Deficit Hyperactivity Disorder ("ADHD") without discussing

why significant probative evidence opinion evidence from the same doctor was rejected. The ALJ also failed to develop the record by relying on an ambiguous statement from the doctor that plaintiff's abilities were "adequate."

The ALJ additionally determined plaintiff's residual functional capacity without including all of plaintiff's limitations. Also, although the ALJ offered a relevant reason to discount plaintiff's credibility, the ALJ relied on plaintiff's activities of daily living without finding that they contradicted plaintiff's testimony or that they were transferable to a work setting; and relied on plaintiff's lack of treatment without discussing potential reasons in the record explaining such lack of treatment.

For these reasons, and based on the relevant record, the Court concludes that this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings.

## BACKGROUND

Plaintiff, REJEANA N. STALLINGS, was born in 1974 and was thirty-two years-old on her alleged disability onset date of September 30, 2006 (see Tr. 107). Although plaintiff worked after her alleged disability onset date, earning $3,536.49 in 2007 and $2,682.33 in 2008, the ALJ found that plaintiff's work attempts generated less than the established substantial gainful activity amounts (see Tr. 12).

On July 18, 2006, Johny K. Lee, P.A. ("P.A. Lee"), noted that plaintiff's "symptoms of anxiety and depression have gotten worse," and that plaintiff was "having anxiety attacks throughout the day" (Tr. 249-50). P.A. Lee assessed that plaintiff suffered from anxiety disorder and insomnia, and prescribed for plaintiff Zoloft, Trazodone,

Oxazepam and counseling (Tr. 250). On September 22, 2006, P.A. Lee indicated that plaintiff was getting a little bit worse, and noted her "insomnia issues, emotional bouts of tearing and some anxiety issues throughout the day" (Tr. 248). P.A. Lee added Wellbutrin to plaintiff's medications (id.).

On February 27, 2008, plaintiff was examined by Dr. Todd D. Bowerly, Ph.D. ("Dr. Bowerly") (see Tr. 266-71). He noted more than once that plaintiff exhibited "limited insight into the nature and extent of her difficulties" (Tr. 268; see also Tr. 269). Dr. Bowerly performed a mental status examination and indicated that "there was no indication of malingering or factitious disorder" (Tr. 268).

Dr. Bowerly also conducted a number of objective tests regarding plaintiff's abilities and limitations (see Tr. 268-71). For example, Dr. Bowerly noted the objective finding that plaintiff only could recall one out of three words to be remembered after a delay and assessed that plaintiff's recent memory "was limited" (Tr. 268). Dr. Bowerly noted the objective finding that plaintiff could repeat only four digits forward and three digits backward on a digit span test, and he assessed that plaintiff's immediate memory was below expected limits for age-matched peers (id.). Following further evaluation of plaintiff's memory function, Dr. Bowerly indicated that plaintiff's "memory function demonstrated average to low average abilities across domains" (id.).

Dr. Bowerly indicated that plaintiff's concentration generally was below expected levels, but was variable (id.). He indicated that plaintiff "performed below expected levels on measures of simple and complex attention and working memory" (id.). Dr. Bowerly assessed that objective testing revealed that plaintiff "demonstrated variable

attention/concentration and a slow pace" (Tr. 269). Regarding plaintiff's pace, Dr. Bowerly reported the objective test results of plaintiff's Trailmaking Test, in which she required 60 seconds to complete Part A (placing her below the 1st percentile) and required 175 seconds to complete Part B (also placing her below the 1st percentile) (Tr. 270). Dr. Bowerly indicated in his medical source statement that plaintiff demonstrated "adequate understanding, reasoning, persistence, attention/concentration, memory, social interaction skills and adaptation abilities" (Tr. 271).

On April 21, 2008, Dr. Thomas Culhane, M.D. ("Dr. Culhane") examined plaintiff and indicated that she was seeking something for her anxiety, among other things (Tr. 314). He assessed that she was suffering from chronic anxiety and chronic depression, among other assessments (id.). He prescribed for plaintiff Klonopin and Zoloft, and indicated an intention to try to switch her to Fluoxetine (Tr. 315). On May 9, 2008, plaintiff was examined by Dr. Siyavash Mohandessi, M.D., who assessed that plaintiff was suffering from depression with anxiety (Tr. 313).

On May 19, 2008, plaintiff was seen by Suzane G. Koch, M.A., N.C.C., M.P.H. ("Ms. Koch") (Tr. 292-98). Ms. Koch provided a provisional diagnosis of major depressive disorder, recurrent, moderate; specific phobia, blood-injection-injury-type; and learning disability, not otherwise specified, among other things (id.). Ms. Koch conducted a mental status examination and indicated her objective observations that plaintiff's "affect was flat and constricted with depressed mood" (Tr. 293). Ms. Koch also assessed that plaintiff's insight was "somewhat less than fair," and that plaintiff suffered

from "memory problems on all levels, but more so for immediate and recent" (id.). She also noted plaintiff's sleep problems (id.).

On September 12, 2008, plaintiff was evaluated by Nurse Catherine Owen, A.R.N.P. ("Nurse Owen") (Tr. 352-54). She noted plaintiff's report of being extremely depressed and performed a mental status examination (Tr. 352-53). Nurse Owen assessed that plaintiff suffered from major depressive disorder, recurrent, moderate; phobia for injections and blood; learning disability not otherwise specified; and ADHD predominantly inattentive type, among other things (Tr. 353). Nurse Owen assessed plaintiff's Global Assessment of Functioning ("GAF") at 50 (id.). Nurse Owen also indicated that plaintiff filled out a "Mood Disorder Questionnaire as well as the ADHD Rating Scale, which shows a high probability for ADHD as well as depression" (id.). She prescribed for plaintiff Ritalin, Seroquel, Clonazepam, and an increase of Prozac (id.).

On December 11, 2008, Nurse Owen again evaluated plaintiff for prescription management (Tr. 395-96). She noted that plaintiff was very frustrated with her attempts to get a job (Tr. 395). Nurse Owen performed a mental status examination (id.). Nurse Owen assessed the same diagnoses as she had previously and maintained plaintiff's prescriptions, although she increased plaintiff's prescription for Concerta for plaintiff's attention deficit disorder (Tr. 395-96).

On April 6, 2009, plaintiff was treated in the emergency room for a suicide attempt in which she overdosed on Seroquel (Tr. 359). Dr. Louis J. Perretta, M.D. diagnosed plaintiff with depression at that time (Tr. 361).

On August 31, 2009, Nurse Owen noted plaintiff report of being tearful "on a daily basis" (Tr. 387). She conducted a mental status examination and again diagnosed plaintiff with major depressive disorder, recurrent, moderate; phobia for injections and blood; learning disability not otherwise specified; and ADHD predominantly inattentive type, among other things (id.). Nurse Owen prescribed Straterra for ADHD; Seroquel for mood stabilization, anxiety and insomnia; Prozac for depression and anxiety; and, Vistaril as needed for anxiety and panic (id.).

In his written decision, the ALJ found that plaintiff had the severe impairments of borderline intellectual functioning, depression, anxiety and drug addiction in remission (see Tr. 12). However, the ALJ found that plaintiff's ADHD was not a severe medically determinable impairment and that she retained the residual functional capacity ("RFC") "to perform a full range of work at all exertional levels but with some nonexertional limitations" (Tr. 16). As part of his RFC determination, the ALJ also found that plaintiff was "able to perform only simple and routine tasks, and c[ould] only frequently interact with the public, supervisors, and co-workers" (id.).

## PROCEDURAL HISTORY

Plaintiff filed applications for Supplemental Security Income and Disability Insurance Benefits on June 19, 2008 (see Tr. 10, 107-17). Her applications were denied initially and following reconsideration (Tr. 62-68, 71-74). Plaintiff's requested hearing was held before Administrative Law Judge Steve Lynch ("the ALJ") on November 16, 2009 (see Tr. 25-49). On December 7, 2009, the ALJ issued a written decision in which he found that plaintiff was not disabled pursuant to the Social Security Act (Tr. 7-19).

On February 23, 2011, the Appeals Council denied plaintiff's request for review, making the written decision by the ALJ the final agency decision subject to judicial review (Tr. 1-3). See 20 C.F.R. § 404.981. In April, 2011, plaintiff filed a complaint in this Court seeking judicial review of the ALJ's written decision (see ECF Nos. 1, 3). On August 23, 2011, defendant filed the sealed administrative record ("Tr.") regarding this matter (see ECF No. 9). In her Opening Brief, among other things, plaintiff challenges the ALJ's evaluation of: (1) the medical evidence; and (2) plaintiff's testimony and credibility (see ECF No. 14, p. 2). Plaintiff also raises the issue of: (3) whether or not the ALJ failed in his duty to develop the record; and (4) whether or not the ALJ determined properly plaintiff's residual functional capacity (id.).

## STANDARD OF REVIEW

Plaintiff bears the burden of proving disability within the meaning of the Social Security Act (hereinafter "the Act"). Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999); see also Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment "which can be expected to result in death or which has lasted, or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Plaintiff is disabled under the Act only if plaintiff's impairments are of such severity that plaintiff is unable to do previous work, and cannot, considering the plaintiff's age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); see also Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing* Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting* Davis v. Heckler, 868 F.2d 323, 325-26 (9th Cir. 1989)); see also Richardson v. Perales, 402 U.S. 389, 401 (1971). Regarding the question of whether or not substantial evidence supports the findings by the ALJ, the Court should "'review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" Sandgathe v. Chater, 108 F.3d 978, 980 (1996) (per curiam) (*quoting* Andrews, supra, 53 F.3d at 1039). In addition, the Court "'must independently determine whether the Commissioner's decision is (1) free of legal error and (2) is supported by substantial evidence.'" See Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2006) (*citing* Moore v. Comm'r of the Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002)); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).

According to the Ninth Circuit, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ - - not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." Bray v. Comm'r of SSA, 554 F.3d 1219, 1226-27 (9th Cir. 2009) (*citing* SEC v. Chenery Corp., 332 U.S. 194, 196 (1947) (other citation

omitted)); see also Molina v. Astrue, 2012 U.S. App. LEXIS 6570 at *42 (9th Cir. April 2, 2012) (Dock. No. 10-16578); Stout v. Commissioner of Soc. Sec., 454 F.3d 1050, 1054 (9th Cir. 2006) ("we cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision") (citations omitted). In the context of social security appeals, legal errors committed by the ALJ may be considered harmless where the error is irrelevant to the ultimate disability conclusion when considering the record as a whole. Molina, supra, 2012 U.S. App. LEXIS 6570 at *24-*26, *32-*36, *45-*46; see also 28 U.S.C. § 2111; Shinsheki v. Sanders, 556 U.S. 396, 407 (2009); Stout, supra, 454 F.3d at 1054-55.

DISCUSSION

1. The ALJ failed to evaluate properly the medical evidence when making the determination regarding plaintiff's severe impairments and failed in his duty to develop the record.

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician or psychologist. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996) (*citing* Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991); Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990)). Even if a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Lester, supra, 81 F.3d at 830-31 (*citing* Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995)). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation

thereof, and making findings." Reddick, supra, 157 F.3d at 725 (*citing* Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).

However, the ALJ "need not discuss *all* evidence presented." Vincent on Behalf of Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (per curiam). The ALJ must only explain why "significant probative evidence has been rejected." Id. (*quoting* Cotter v. Harris, 642 F.2d 700, 706-07 (3d Cir. 1981)).

The ALJ relied in part on Dr. Bowerly's medical source statement when making the determination that plaintiff did not have ADHD as a severe medically determinable impairment (see Tr. 14 (*citing* Exhibit 3F)). The ALJ's discussion regarding plaintiff's ADHD included the following:

> Despite Nurse Owen's diagnosis of ADHD, the claimant has not undergone any thorough psychological evaluation which has found her to have this condition. When she underwent a psychological evaluation in February 2008, this condition was not diagnosed and in fact she was reported to have adequate persistence, attention, concentration, and memory.

(Tr. 14 (*citing* Exhibit 3F)).

The ALJ relied on Dr. Bowerly's determination that plaintiff's persistence, attention, concentration and memory were "adequate," without any indication in Dr. Bowerly's report what activities plaintiff's abilities were adequate enough to allow her to perform. Importantly, Dr. Bowerly did not opine that plaintiff's persistence, attention, concentration and memory were adequate such that they did not cause more than a minimal effect on her ability to work. See Smolen, supra, 80 F.3d at 1290 (*quoting* Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988) ("An impairment or combination of

impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual[']s ability to work'"). Plaintiff's persistence, attention, concentration and memory may be "adequate" and nevertheless may support a diagnosis of ADHD and nevertheless may demonstrate that plaintiff's ADHD caused more than a minimal effect on plaintiff's ability to work.

The Court finds that Dr. Bowerly's conclusion that plaintiff's persistence, attention, concentration and memory were "adequate" is an ambiguous statement in this context. An ALJ has a duty to develop the record when there is ambiguous evidence or if the record is inadequate to allow for proper evaluation of the evidence. See Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001); Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001)).

The ALJ's reliance on Dr. Bowerly's ambiguous statement to find that plaintiff's ADHD was not a severe medically determinable impairment was improper. See Mayes, supra, 276 F.3d at 459-60; Tonapetyan, supra, 242 F.3d at 1150. This finding is bolstered by a review of Dr. Bowerly's treatment report (see Tr. 266-71). While this report includes the statement relied on by the ALJ, it also contains objective medical evidence and medical opinion evidence directly contrary to the ALJ's conclusion, which the ALJ erroneously failed to mention. See Vincent on Behalf of Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (per curiam) (*quoting* Cotter v. Harris, 642 F.2d 700, 706-07 (3d Cir. 1981)) (an ALJ must explain why "significant probative evidence has been rejected").

As discussed, see supra, BACKGROUND section, Dr. Bowerly conducted a number of objective tests regarding plaintiff's abilities and limitations (see Tr. 268-71), and noted the objective finding that plaintiff could only recall one out of three words to be remembered after a delay and opined that the plaintiff's recent memory "was limited" (Tr. 268). Dr. Bowerly noted the objective finding that plaintiff could repeat only four digits forward and three digits backward on a digit span test, and he opined that plaintiff's immediate memory was below expected limits for age-matched peers (id.).

Dr. Bowerly also indicated that plaintiff's concentration generally was below expected levels and indicated that plaintiff "performed below expected levels on measures of simple and complex attention and working memory" (id.). Dr. Bowerly assessed that objective testing revealed that plaintiff "demonstrated variable attention/concentration and a slow pace" (Tr. 269).

In finding that plaintiff's ADHD, "even assuming the claimant does have this condition," was not a severe medically determinable impairment (see Tr. 14), the ALJ relied on Dr. Bowerly's assessment that plaintiff's persistence, attention, concentration and memory were "adequate," without discussing the significant probative evidence from Dr. Bowerly's report demonstrating that plaintiff suffered from impaired attention, concentration and memory (see Tr. 268-69). In this context, Dr. Bowerly's assessment that plaintiff's abilities in this area were "adequate" is ambiguous as to whether or not plaintiff's ADHD had more than a minimal effect on her ability to work, see Mayes, supra, 276 F.3d at 459-60; Tonapetyan, supra, 242 F.3d at 1150, and as such, the ALJ's reliance on this statement, without a discussion of the significant, probative evidence to

the contrary, was improper. See Vincent, supra, 739 F.2d at 1394-95; see also Cotter, supra, 642 F.2d at 706-07. Following remand of this matter, the ALJ should develop the record further on the issue of plaintiff's alleged ADHD, such as by obtaining a psychological or psychiatric evaluation from an examining medical consultant. See Mayes, supra, 276 F.3d at 459-60; Tonapetyan, supra, 242 F.3d at 1150.

For the reasons stated and based on a review of the relevant record, the Court concludes that this matter should be reversed and remanded for further consideration. Following remand, the issue of whether or not plaintiff suffered from a severe medically determinable impairment of ADHD should be evaluated anew and all of the significant probative evidence concerning that issue should be addressed.

The ALJ's review of Dr. Bowerly's treatment records is improper for an additional reason. Dr. Bowerly did not provide an opinion regarding plaintiff's pace in his medical source statement, and his report contains objective evidence demonstrating limitations regarding plaintiff's pace and also includes Dr. Bowerly's opinion that plaintiff's pace was slow (Tr. 269). The ALJ does not appear to have accounted for any limitations regarding pace when making the determination regarding plaintiff's residual functional capacity ("RFC") (see Tr. 16). However, the ALJ failed to discuss significant probative objective evidence that plaintiff demonstrated delayed times on her Trailmaking Test and failed to discuss Dr. Bowerly's opinion regarding plaintiff's slow pace (see Tr. 15).

Although plaintiff argues that the ALJ failed to account for plaintiff's limitations regarding pace when determining plaintiff's RFC (see Opening Brief, ECF No. 14, p. 16 (*citing* Tr. 269)), defendant fails to respond to this specific argument (see Response, ECF

No. 15, pp. 12-13). Although defendant argues in general that an "ALJ is not required to include opinion evidence that has been properly discounted in the residual functional capacity finding" (id., p. 13), this argument is not helpful to the Court as the ALJ gave great weight to the opinions of Dr. Bowerly (see Tr. 17-18) and did not even mention, much less discount properly, Dr. Bowerly's objective finding that plaintiff took 60 seconds (<1st percentile) to complete part A of the Trailmaking Test, and 175 seconds (<1st percentile) to complete part B of the Trailmaking Test; nor Dr. Bowerly's opinion that plaintiff demonstrated "a slow pace" (Tr. 269, 270). Although Dr. Bowerly indicated his medical source statement that plaintiff demonstrated "adequate understanding, reasoning, persistence, attention/concentration, memory, social interaction skills and adaptation abilities," this statement indicates no opinion about pace and does not contradict his opinion earlier in the report that her pace was "slow" (Tr. 269, 271). As noted by the ALJ, the state agency medical consultants also opined that plaintiff would have some problems with pace (see Tr. 18 (*citing* Exhibits 5F, 6F, 10F, and 11F)). The Court finds that the ALJ failed to provide "specific and legitimate reasons that are supported by substantial evidence in the record" for his failure to consider and credit fully Dr. Bowerly's opinion regarding plaintiff's pace. See Lester, supra, 81 F.3d at 830-31.

In addition, according to Social Security Ruling ("SSR") 96-8p, a residual functional capacity assessment by the ALJ "must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 SSR LEXIS 5 at *20.

Here, the ALJ's RFC assessment conflicts with Dr. Bowerly's opinion regarding plaintiff's slow pace, yet the ALJ failed to explain why this opinion was not adopted. See id. The ALJ also failed to mention the significant probative evidence of plaintiff's delayed times on her Trailmaking Test. In this context, the Court also notes plaintiff's argument that the ALJ erred by failing to include limitations opined by state agency medical consultants into plaintiff's RFC (see Opening Brief, ECF No. 14, pp. 16-17).

Based on a review of the relevant record, the Court concludes that the ALJ's determination regarding plaintiff's RFC and her potential limitations regarding pace should be evaluated anew following remand of this matter. These errors in the ALJ's assessment regarding pace and plaintiff's RFC provide an independent reason as to why this matter should be reversed and remanded for further administrative proceedings. Following remand, all of plaintiff's limitations should be incorporated into plaintiff's RFC or rejected appropriately by the ALJ.

2. <u>The ALJ erred in his evaluation of plaintiff's testimony and credibility</u>.

The Court notes that the ALJ erred in his review of plaintiff's credibility. For instance, he relied on plaintiff's activities of daily living without finding that they were transferable to a work setting or that they contradicted her other testimony. See Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007); see also Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001); Fair, supra, 885 F.2d at 603. The ALJ also relied on plaintiff's missed counseling appointments without consideration of the reasons supplied by plaintiff as to why she missed her appointments (see Tr. 16, 39 ("when I have a schedule,

it's - - when I have like something to do Monday, something at the same time all the time, something in the day Tuesday, but then they're different days, I get them mixed up")). See also Social Security Ruling, (hereinafter "SSR"), SSR 96-7 1996 SSR LEXIS 4, at *22 ("the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment"); Regennitter v. Comm'r SSA, 166 F.3d 1294, 1296 (9th Cir. 1999). The Court also notes, however, that the ALJ appropriately noted plaintiff's inconsistent statements about her drug use. Cf. Verduzco v. Apfel, 188 F.3d 1087, 1090 (9th Cir. 1999) (reliance on inconsistent statements concerning alcohol use is proper).

Nevertheless, a determination of a claimant's credibility relies on the assessment of the medical evidence. See 20 C.F.R. § 404.1529(c). The Court already has concluded that the ALJ erred in his review of the medical evidence and that this matter should be reversed and remanded for further consideration as a result of the improper evaluation of the medical evidence, see supra, section 1. Therefore, the Court concludes that the ALJ should assess anew plaintiff's testimony and credibility following remand of this matter. Similarly, following remand, all of the five steps of the sequential disability evaluation process should be assessed anew.

## CONCLUSION

The ALJ failed in his duty to develop the record by relying on an ambiguous record when evaluating plaintiff's alleged ADHD. The ALJ also failed to discuss and rejected properly significant probative evidence. In addition, the ALJ's RFC determination did not contain all of plaintiff's limitations that were not rejected properly.

Based on these reasons, and the relevant record, the undersigned recommends that this matter be **REVERSED** and **REMANDED** to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g). **JUDGMENT** should be for **PLAINTIFF** and the case should be closed.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge. See 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on May 18, 2012, as noted in the caption.

Dated this 27th day of April, 2012.

J. Richard Creatura
United States Magistrate Judge